UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

RICKY WHENTWORTH, CIV. NO. 10-2270 (JNE/JSM)

Petitioner,

v.

REPORT AND RECOMMENDATION

SCOTT P. FISHER, WARDEN

Respondent.

This matter is before the undersigned Magistrate Judge of the District Court on petitioner Ricky Whentworth's Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 [Docket No. 1]. Whentworth claims that the Bureau of Prisons ("BOP") violated the Administrative Procedure Act, 5 U.S.C §§701 and 702,[1] and his Fifth and Sixth Amendment rights to due process in disciplinary proceedings by arbitrarily and capriciously withholding good time credit, telephone, commissary and visiting privileges as well as imposing a disciplinary transfer to a higher security prison. Petition, p. 7.

The respondent opposes Whentworth's habeas petition, contending that Whentworth failed to properly exhaust his administrative remedies before bringing his petition. Government's Response to Petition for Writ of Habeas Corpus ("Gov't Response"), pp. 8-11 [Docket No. 4]. In the alternative, the respondent has asked that

---

[1] Whentworth did not elaborate on this argument. Section §701 is the definition section of the Administrative Procedure Act. Section §702 confers on an individual harmed by agency action the right to judicial review, but only when "there is no other adequate remedy in a court… ." 5 U.S.C §704. "Habeas corpus is the proper judicial procedure for reviewing [a] BOP decision as Congress has declared the Administrative Procedure Act inapplicable." Fegans v. United States, 506 F.3d 1101, 1102 n.1 (8th Cir. 2007). Thus, this Court will analyze Whentworth's petition pursuant to 28 U.S.C §2241 and not the Administrative Procedure Act.

the petition be dismissed on its merits because there was sufficient evidence to support the hearing officer's finding that Whentworth committed the prohibited act of Possession of Anything Not Authorized.

The matter has been referred to this Court for a Report and Recommendation under 28 U.S.C. § 636 and Local Rule 72.1(c). For the reasons discussed below, the Court recommends that the petition be denied.

## I. BACKGROUND

On June 22, 2009, Whentworth was sentenced to a 120-month prison term with eight years of supervised release following his conviction by the United States District Court, Eastern District of Kentucky, for Conspiracy to Distribute Cocaine in violation of 21 U.S.C. §846. Declaration of Ann C. Kinyon in Support of Government's Response ("Kinyon Decl."), Attachment 1, p. 2 (Public Information Data) [Docket No. 5]. Whentworth was originally incarcerated at the Federal Correctional Institution ("FCI") in Manchester, Kentucky. Whentworth is presently serving his sentence at the FCI in Sandstone, Minnesota. His projected release date is August 11, 2017, based on good conduct time release. Id.

On January 28, 2010 Whentworth received an incident report for Possession of Anything Not Authorized (Code 305) at Manchester FCI. Kinyon Decl. ¶3, Attachment 2. The incident report was re-written on February 1, 2010 to add a charge for Possession of a Hazardous Tool (Code 108). Kinyon Decl., Attachment 2, pp. 5-6. The revised incident report indicated that on January 28, 2010, a Manchester FCI staff member, C. Gay, entered Whentworth's cell to conduct an area search. Id., p. 5. Under a coat on the bottom bunk, the staff member found three prepaid phone cards, one refill

phone card, four hands-free telephone headsets, three rolls of five packs of snuff tobacco and eight cartons of cigarettes. Id. Whentworth claimed that the items were found on his cell-mate's bed, under the cell-mate's jacket. Petition for Writ of Habeas Corpus ("Petition"), p. 7 [Docket No. 1]. Whentworth stated to Gay "that the items mentioned above were his." Kinyon Decl., Attachment 2, p. 5. The matter was referred to the Unit Discipline Committee ("UDC")[2] and a UDC hearing was held on February 2, 2010. Kinyon Decl., ¶4; Attachment 2, p. 5. On February 1, 2010, and prior to the UDC hearing, an investigation was held. Kinyon Decl., ¶3; Attachment 2, p. 6. At this time Whentworth was given a copy of the incident report, advised of his rights, including his right to remain silent "at all stages of the disciplinary process." Id., p. 6. Whentworth stated that he understood the rights as they were read to him. Id. Whentworth also stated to the investigator: "Yes it's my stuff. I paid a guy to go intercept the stuff that was meant for some guys who stole my tennis shoes." Id. At the hearing before the UDC, Whentworth stated that "I didn't know it [the contraband] was in my cell. I did tell another inmate to go pick the items up. It wasn't mine. I didn't know that he was going to bring the items to my room. I told him to take what he wanted and to get rid of the rest." Id., p. 5.

[2] A Unit Discipline Committee is comprised of one or more institution staff members to whom the Warden delegates the authority and duty to hold an initial hearing upon the completion of an investigation. The UDC is authorized to impose minor dispositions and sanctions. When an alleged violation of BOP rules is serious, the UDC must refer the charges to the Discipline Hearing Officer. 28 C.F.R. §541.15 (2010). All references in this Report and Recommendation are to the 2010 version of the C.F.R., which was controlling at the time Whentworth was disciplined and filed his Petition.

The UDC referred the matter to the Discipline Hearing Officer ("DHO")[3] for further hearing and because the DHO had the authority to impose greater sanctions on Whentworth than the sanctions available at the UDC level. Id., p. 5. If the DHO found Whentworth guilty of the charges, the UDC recommended that sanctions be imposed in the form of a disciplinary transfer, loss of good conduct time, disciplinary segregation and any other sanctions at the DHO's discretion. Id., p. 5. This decision was based on Whentworth's statement that the items were in his cell and a photograph of the contraband. Id., pp. 6-7.

Respondent asserts, and Whentworth does not deny, that he received a notice of advisement of a disciplinary hearing on February 2, 2010. Kinyon Decl., ¶4. At this time, he was provided with and signed a form entitled "Inmate Rights at Disciplinary Hearing," in which he was notified of his right to representation by a staff member, the right to call witnesses (or present written statements of unavailable witnesses) and to present documentary evidence, provided institutional safety would not be jeopardized," the right to present a statement or remain silent, the right to present during the hearing, the right to be advised of the DHO's decision, and the right to appeal the decision to the Regional Director within 20 days of notice of the DHO's decision and disposition. Kinyon Decl., Attachment 2, p. 8. Whentworth also signed on the same day, February 2, 2010, another form entitled "Notice of Discipline Hearing Before the DHO," in which

---

[3] A Discipline Hearing Officer is an independent hearing officer who is responsible for conducting disciplinary hearings and who has the authority to impose sanctions for incidents of inmate misconduct referred for disposition following the hearing before the UDC. The DHO must be an impartial decisionmaker and may not be "the reporting officer, investigating officer or UDC member or a witness to the incident or play any significant part in having the charge(s) referred to the DHO. 28 C.F.R. §541.16.

he indicated that he did not wish to have a staff representative present at hearing and he did not wish to call witnesses. Id., p. 9.

A hearing before DHO, Timothy Smart, was held on February 18, 2010. Kinyon Decl., Attachment 2, p. 1. The DHO's report indicated that Whentworth was advised of his rights and stated that he understood those rights. Id., pp. 1-2. Whentworth did not request the services of a staff representative, nor did he request witnesses for his defense. Id. The DHO noted in his report that there was a delay between the date the contraband was found, and the date on which Whentworth received notice of the charges. Id., p. 2. The delay was caused by the decision to re-write the report to add the charge of Possession of a Hazardous Tool. Id. The reason for the delay was explained to Whentworth and he stated to the DHO that the delay did not adversely affect his ability to defend himself, and that he was ready to proceed with the hearing. Id.

At the hearing, Whentworth stated "none of it was mine. I told another inmate to go intercept it and pick it up." Id. Nevertheless, the DHO found that Whentworth had committed the prohibited act of Possession of Anything Not Authorized, Offense Code 305. Id. In reaching this finding, the DHO considered the written statement of the investigator, Gay, regarding the contraband found in Whentworth's cell and Gay's report that Whentworth stated that "the items mentioned above were his." Id. The DHO showed Whentworth the photograph of the contraband. Id. The DHO also considered Whentworth's statement that "none of it was mine. I told another inmate to go intercept it and pick it up." Id. The DHO rejected this statement because Whentworth provided no other evidence "other than you say it is so." Id. Additionally, the DHO found that

Whentworth's claim lacked credibility because of his previous statement to Gay that the items were his, his statement to the investigator that "yes, it's my stuff," and Whentworth's statement to the DHO that he told another inmate to intercept the contraband and go pick it up. Id., pp. 2-3. The DHO concluded that "[b]ased on your statements, it's reasonable to believe that you, at the very least, had "knowing possession" [of the contraband.] In other words, you could have exercised dominion or control over the contraband as evidenced by your statement you told another inmate to go and pick the contraband up." Id., p. 3.

The DHO further explained his reasons for his decision as follows:

> Additionally, the reporting employee found the contraband in your cell. As I explained to you during your hearing, you are responsible for ensuring your area is free of contraband. In other words, inmates are expected to ensure that there is no contraband in their cubicles/cells. The fact that a correctional officer could perform a random search of your cubicle and find the contraband under a bed indicates that you could have also found the items had you checked the area. Your contiguous access to the head sets and tobacco is some evidence that you had constructive possession of the contraband. In this case, the head sets and tobacco were reasonably accessible to you. Furthermore, your responsibility for ensuring your cell was free of contraband established your culpability in this incident.
>
> Based on your half-hearted admission statements regarding knowing possession, the greater weight of evidence suggests the items of contraband were yours and not your cell-mate; as he denied any knowledge of the contraband throughout the discipline process.
>
> Therefore, the DHO finds the greater weight of the above listed evidence support you committed the prohibited act of possession of anything not authorized, Code 305.

Id., p. 3.[4]

The DHO imposed the sanctions of disciplinary segregation of 15 days, disallowed good conduct time of 13 days, forfeiture of 13 days of non-vested good conduct time, loss of commissary privileges for 180 days, loss of visiting privileges of 180 days and loss of telephone privileges for 180 days. Id., pp. 3-4. The DHO also recommended a disciplinary transfer because Whentworth "need[ed] to be placed in an institution that can afford [him] more structure and greater supervision." Id. Whentworth was transferred from FCI Manchester to FCI Sandstone on March 17, 2010. Kinyon Decl., ¶5.

Whentworth did not receive a copy of the DHO report until May 25, 2010, over three months after the hearing. Id. The DHO noted in the report that the delay was occasioned by "the number of incident reports referred to the DHO, circuit responsibilities, and other administrative duties." Kinyon Decl., ¶5, Attachment 2, p. 3. The report indicated that Whentworth was advised of his right to appeal the DHO's decision within twenty calendar days under the Bureau of Prison's ("BOP") Administrative Remedy Procedure. Kinyon Decl., Attachment 2, p. 4. It is undisputed that Whentworth did not appeal the DHO's decision through the administrative remedy process, but instead filed his habeas corpus petition on June 7, 2010. [Docket No. 1].

In his Petition, Whentworth has alleged that when he was given a copy of the incident report, he was told that he "better take the 305 shot (referring to Code 305, Possession of Anything Not Authorized) or you will spend more than that time in the hole fighting a 108 shot (referring to Code 108, Possession of Anything not

[4] The charge of Possession of a Hazardous Tool was dropped. Kinyon Decl., ¶5, Attachment 2, p. 2.

Authorized)."[5] Petition, p. 7. Whentworth also alleged that he requested the appointment of a staff representative to assist him in his defense at the disciplinary hearing, but his request was denied. Id., p. 8. Whentworth further alleged that he asked that certain witnesses be called to appear at the disciplinary hearing, including his cellmate, the reporting officer, the "SIS Lieutenant," the lieutenants who issued the original disciplinary report and the re-written disciplinary report, and two unnamed inmates who were placed into segregation on or about January 28, 2010 in connection with the contraband found in Whentworth's cell. Id. Whentworth claimed he was denied the opportunity to call those witnesses. Id. Whentworth also claimed that he asked for his cellmate's disciplinary records, but was refused. Id. According to Whentworth, his cellmate was never issued an incident report, questioned or disciplined.[6]

Whentworth asserted that that the DHO was not trained or certified to be a hearing officer, should not have been allowed to preside over his disciplinary hearing, and that that Smart's decision was not based on "any" evidence. Id. Whentworth further claimed that the DHO erred by failing to consider evidence of the alleged threats made to Whentworth in connection with the charges. Petitioner's Reply to Respondent's Response ("Pet. Reply"), p. 3 [Docket No. 10].

Whentworth signed his habeas petition on May 8, 2010. Petition, p. 11. At that point, he had not yet received a copy of the DHO report. However, at least as of March

---

[5] As Whentworth did not plead guilty to the charges and proceeded to a disciplinary hearing, the Court did not construe his reference to the prison staff's comment to mean that he was alleging that he was coerced to admit to the charges or plead guilty.

[6] The DHO's report indicated that Whentworth's cellmate denied the contraband was his. Kinyon Decl., Attachment 2, p. 3.

5, 2010 (before his transfer to FCI Sandstone), he was aware of the decision of the DHO and the sanctions imposed against him. Petition, p. 8 (“The DHO remarked that I denied involvement in the incident, see Attach. 1”), p. 12 (Attachment 1 (Inmate Disciplinary Data dated March 5, 2010)).

## II. DISCUSSION

### A. Whentworth’s Failure to Exhaust His Administrative Remedies

Respondent argued that Whentworth’s petition should be denied because he has not exhausted his administrative remedies and deliberately bypassed the exhaustion requirement. See Government’s Response to Petition for Writ of Habeas Corpus (“Gov’t Response”), at pp. 4-5. Whentworth has admitted that he did not exhaust his administrative remedies, but claimed that he should be excused from complying with the exhaustion requirement because the BOP’s failure to provide him with the DHO report within ten days of the DHO’s decision, “as required by the Program Statement 5270.07(7)(9)(G),” prevented him from appealing the DHO’s decision to the North Central Regional Office. Petition, p. 9, Pet. Reply, pp. 1-2. Whentworth also argued that his transfer from Manchester to Sandstone “severely limited his access to the staff who possess material information related to the issuance of the Incident Report,” and, as a result, the Court should excuse his bypass of the administrative remedy process and decide the petition on its merits. Pet. Reply, pp. 1-2.

Generally, federal prisoners must exhaust all available administrative remedies before seeking federal habeas corpus relief under 28 U.S.C. § 2241. See, e.g., Mathena v. United States, 577 F.3d 943, 946 (8th Cir. 2009) (prisoner’s § 2241 petition must be dismissed without prejudice for failure to exhaust administrative remedies

within the BOP); United States v. Tindall, 455 F.3d 885, 888 (8th Cir. 2006) ("after properly exhausting…administrative remedies, an inmate may seek judicial review through filing a habeas corpus petition under 28 U.S.C. §2241"); United States v. Pardue, 363 F.3d 695, 699 (8th Cir. 2004) ("once administrative remedies are exhausted, prisoners may then seek judicial review… ."); States v. Chappel, 208 F.3d 1069, 1069-70 (8th Cir. 2000) (per curiam) (affirming district court's order dismissing §2241 habeas petition for failure to exhaust administrative remedies).

The exhaustion requirement protects agency power by giving it "the opportunity to apply its expertise, exercise the discretion delegated to it by Congress, and correct its own alleged errors" and allows the agency to fully develop a factual record for judicial review, as well as to aid the court in understanding technical matters. United States v. Dico, Inc., 136 F.3d 572, 576 (8th Cir.1998).

The exhaustion requirement for a §2241 habeas petition is judicially created, and not jurisdictional. Therefore, a court may exercise its discretion to decide a petition on its merits, even if a prisoner has not exhausted his administrative remedies. Leuth v. Beach, 498 F.3d 795, 797 n. 3 (8th Cir. 2007) (finding failure to exhaust administrative remedies does not affect court's ability to decide case where "the exhaustion prerequisite for filing a 29 U.S.C. §2241 petition is judicially created, not jurisdictional"). (citations omitted).

In determining whether inmates should be required to exhaust their administrative remedies, courts exercise their discretion by "balanc[ing] the interests of the individual in retaining prompt access to a federal forum against countervailing institutional interests favoring exhaustion." McCarthy v. Madigan, 503 U.S. 140, 146

(1992).[7] Notwithstanding the "substantial institutional interests" in exhaustion, the Supreme Court has cautioned that "administrative remedies need not be pursued if the litigant's interest in immediate judicial review outweigh the government's interest in the efficiency or administrative autonomy that the exhaustion doctrine is designed to further. Id. at 146 (internal quotation and citation omitted). "Application of this balancing principle is intensely practical…because attention is directed to both the nature of the claim presented and the characteristics of the particular administrative procedure provided." Id. (internal quotation and citations omitted.).

Additionally, habeas petitioners may be excused from the exhaustion requirement if proceeding through the administrative remedy process would undoubtedly be an exercise in futility that could serve no useful purpose. See Elwood v. Jeter, 386 F.3d 842, 844 n.1 (8th Cir. 2004) (exhaustion requirement waived based on government's concession that "continued use of the [administrative] grievance procedure to contest the validity of the BOP's new policy would be futile."); Gonzalez v. O'Connell, 355 F.3d 1010, 1016 (7th Cir. 2004) (finding that a court may waive the exhaustion requirement for a §2241 petition to prevent prejudice caused by unreasonable delay or when an agency has predetermined an issue).

An inmate may seek review of grievances through a three-tier administrative-remedy structure. 28 C.F.R. § 542.10. An inmate begins the administrative-remedy

---

[7] McCarthy has been superseded by statute to the extent that it held that federal prisoners seeking money damages in a Bivens action are not required under 42 U.S.C. §1997(e) to exhaust BOP administrative remedies. The Seventh Circuit has noted that the holding of McCarthy relating to the exercise of judicial discretion when exhaustion is not statutorily mandated, and the Supreme Court's "admonitions on how that discretion should be utilized," remains good law. Gonzalez v. O'Connell, 355 F.3d 1010, 1016 (7th Cir. 2004).

process by pursuing informal resolution through prison staff. 28 C.F.R. § 542.13. If the inmate is dissatisfied with the decision at the prison level, at the second tier, he may appeal that decision to the Regional Director, and if he is still dissatisfied with the response of the Regional Director, at the third tier, he may appeal the Regional Director's decision to the General Counsel at the BOP's Central Office. 28 C.F.R. § 542.15(a). A response from the General Counsel completes the internal appeal process. Id.

An inmate may appeal a DHO decision by submitting an appeal directly to the Regional Director without first pursuing informal resolution. 28 C.F.R. §§ 541.19, 542.13, 542.14(d)(2). An inmate must ordinarily submit this initial appeal to the Regional Director within twenty days of the date on which the inmate received written notice of the DHO's decision. 28 C.F.R. § 542.15. BOP regulations require the DHO to provide the inmate with "a written copy of the decisions and disposition" and that the inmate must receive the report "ordinarily within 10 days of the DHO's decision." 28 C.F.R. § 541.17(g). At the same that that the inmate receives written notice of the DHO's decision, the DHO must advise the inmate of his appeal rights under the Administrative Remedy Procedures. 28 C.F.R. §541.19.

The DHO's failure to issue a report within the 10-day timeframe does not automatically constitute a due process violation or excuse an inmate from exhausting his administrative remedies. See Rivero v. Fisher, Civ. No. 10-3045 (SRN/JJK), 2011 WL 1262139 at *3 (D. Minn., Feb. 18, 2011) (Report and Recommendation adopted by 2011 WL 1212083 (D. Minn., March 31, 2011)). The use of the term "ordinarily" in the regulation indicates that there may be circumstances in which the DHO report may

issue beyond the ten-day timeframe. Further, the regulation provides that an inmate "should forward a copy of the DHO report or, if not available at the time of filing, should state in his appeal the date of the DHO hearing and the nature of the charges against the inmate." 28 C.F.R. § 542.15 (emphasis added).

In Rivero, an inmate filed a §2241 habeas petition without filing any internal appeals, either before or after he received a copy of the DHO report, which was issued two-and-a-half months after the hearing. 2011 WL 1262139 at *3. The court noted that the ten-day period described in 28 C.F.R. §541.17(g) was not mandatory, and because the inmate could have pursued his appeal without a copy of the DHO report, that the delay in delivering the report did not affect the inmate's obligation to exhaust his administrative remedies. Id. The court dismissed the case for failure to exhaust administrative remedies.[8] Id.

In Staples v. Chester, 370 Fed. Appx. 925 (10th Cir. 2010), an inmate filed a §2241 habeas petition after he was found guilty by a DHO of "Possession of Anything Not Authorized." Id. at 928. The DHO sanctioned the inmate with disciplinary segregation and loss of good-time credits. Id. The DHO signed the written report on January 28, 2008 and the inmate received a copy of the report nearly eight months later, on September 8, 2008. Id. The inmate attempted to file a regional appeal without a copy of the DHO report, but he was advised to wait until he received the report. Id.

---

[8] In Rivero, the court dismissed the case without prejudice because it was not clear from the Government's submissions as to whether the Regional Office would reject an appeal of the unfavorable decision of the DHO on grounds that it was untimely, and the court found it particularly important to allow the appeals process to run its course because the suit was likely to be one of the only cases to test the new policy prohibiting Voice over Internet Protocol calls. 2011 WL 1262139 at *4.

The respondents argued that the petition should be dismissed because the inmate failed to exhaust administrative remedies. Id. The district court agreed and dismissed the petition. Id. On appeal, the inmate argued that exhaustion would have been futile, in light of the fact that he did not receive the DHO report for nearly eight months. Id. at 929. When his appeal to the regional office was rejected because he did not include the DHO report, he contended that he had no choice but to file a habeas petition. Id.

The Tenth Circuit noted the language in 28 C.F.R. §541.19, which contemplates that an appeal may be taken without a copy of the DHO report, but declined to decide whether the regional office was wrong to reject the appeal in the absence of the report. Rather, the court found that the inmate had failed to establish any prejudice resulting from the nearly eight-month delay in issuing the DHO report, and concluded that the inmate was free to re-file his appeal within the time permitted after he received the DHO report. Id. at 930. In support of its finding of lack of prejudice, the court noted particularly the time remaining in the prisoner's sentence—his projected release date was 2019. Id. See also Pinson v. Davis, Civ. No. 11-608, 2011 WL 2802761 at *3 (D. Colo., July 14, 2011) (prisoner's failure to show that he was prejudiced by delay in issuance of DHO report warrants dismissal of habeas petition where he has failed to exhaust his administrative remedies); Davis v. Zych, Civ. No. 2:08-13962, 2010 WL 5015383 at *3 (E.D. Mich., Dec. 3, 2010) (three month delay in issuance of DHO report, in the absence of evidence that the delay prejudiced the inmate did not result in an "automatic" due process violation); Cook v. Warden, Fort Dix Corr. Instit., 241 Fed. Appx. 828, 829 (3rd Cir. 2007) (delay in issuance of DHO report had no prejudicial effect on inmate's administrative appeal and did not provide a basis for habeas relief).

In an effort to excuse his failure to exhaust the required administrative remedies, Whentworth argued that he could not "appeal the DHO decision to the North Central Regional Office without a copy of the DHO report." Petition, p. 9. Whentworth also submitted that his transfer from FCI Manchester to FCI Sandstone "severely limit[ed] his access to the staff who possess material information related to the issuance of the Incident Report" and, on that basis, the Court should relieve him of the obligation that the exhaust his administrative remedies. Pet. Reply, p. 2.

This Court rejects Whentworth's explanations, and finds that he should not be excused from exhausting the administrative remedy procedures because exhaustion was neither futile nor outweighed by his interest in having his day in court.

As a preliminary matter, Whentworth has provided no explanation of why he did not initiate an appeal after he received a copy of the DHO report on May 25, 2010, or why he did not pursue his appeal without a copy of the DHO report, as permitted by 28 C.F.R. §541.19 (2010). Moreover, Whentworth did not describe what material information in the possession of staff members of FCI Manchester was critical to an appeal, particularly where an appeal is made on the basis of the written record, and does not entail the introduction of new evidence. See 28 C.F.R. 542.15 (b) (describing the form on which an appeal is made and stating that the inmate "may not raise in an Appeal issues not raised in lower level findings."). Additionally, to the extent that Whentworth's transfer from FCI Manchester to FCI Sandstone was disruptive and interfered with his access to personal papers and records he may have needed in connection with an appeal, he could have sought an extension of the twenty-day deadline for his appeal. 28 C.F.R. §542.15 provides that "[w]hen an inmate

demonstrates a valid reason for delay, these time limits may be extended. Valid reasons for delay include those situations described in §542.14(b) of this part." Section 542.14(b) provides:

> b) Extension. Where the inmate demonstrates a valid reason for delay, an extension in filing time may be allowed. In general, valid reason for delay means a situation which prevented the inmate from submitting the request within the established time frame. Valid reasons for delay include the following: an extended period in-transit during which the inmate was separated from documents needed to prepare the Request or Appeal; an extended period of time during which the inmate was physically incapable of preparing a Request or Appeal; an unusually long period taken for informal resolution attempts; indication by an inmate, verified by staff, that a response to the inmate's request for copies of dispositions requested under § 542.19 of this part was delayed.

Whentworth has not argued that an appeal would be futile, or that the BOP has pre-judged his case, circumstances that could excuse his failure to exhaust his administrative remedies. See Elwood, 386 F.3d at 844 n. 1; Gonzalez, 355 F.3d at 1016 (a court may waive the exhaustion requirement for a § 2241 petition to prevent prejudice caused by unreasonable delay or when an agency has predetermined an issue).

In summary, in the absence of any evidence that an appeal though the administrative process would be futile, to excuse Whentworth's failure to exhaust his administrative remedies when he had the opportunity to appeal without a copy of the DHO decision, to appeal within 20 days after he received the decision, or to seek an extension of time to appeal to gather his papers, would impermissibly usurp the BOP's interests in its own administrative remedies process. See McCarthy, 503 U.S. at 144-145. In balancing the Whentworth's interests against the interests of the BOP under the

facts and circumstances of this case, this Court concludes that Whentworth's Petition should be dismissed with prejudice for failure to exhaust his administrative remedies.[9]

**B. Petitioner Was Provided Adequate Due Process**

The Court also recommends that the Petition be denied on its merits. Whentworth appeared to claim that based on the Fifth and Sixth Amendments,[10] he was denied due process because the sanctions imposed upon him were arbitrary and capricious.[11] The record as a whole, however, indicated that Whentworth was provided with adequate procedural due process protections throughout the disciplinary process.

---

9 Unlike Rivero, where the respondent was not clear as to whether pursuit of the administrative remedy scheme would be denied on timeliness grounds and the facts of the case presented unique and unresolved issues, here the court has no reason to dismiss the case without prejudice.

10 Generally, due process claims such as those made here are analyzed under the Fourteenth Amendment. See Wolff v. McDonnell, 418 U.S. 539 (1974). However, loss of good time credits as a disciplinary measure for violating a prison rule, also implicates a liberty interest protected by the Fifth Amendment. Sweesy v. Federal Bureau of Prisons, Civ. No. 08-323 (PAM/JJK), 2009 WL 1244047 at *3 (D. Minn., May 4, 2009) (citing Wolff, 418 U.S. at 557). Nevertheless, this Court has analyzed Whentworth's due process claims under the Fourteenth Amendment, as both amendments require the same type of analysis. Wolff, 418 U.S. at 557-58. Whentworth did not elaborate on the basis of his Sixth Amendment claim. To the extent that this claim can be interpreted as arising out of his allegation that the BOP deprived him of his right to call witnesses on his behalf at the disciplinary hearing, or to the assistance of counsel, it is well-established that inmates have no right to retained or appointed counsel at prison disciplinary proceedings. Baxter v. Palmigiano, 425 U.S. 308, 315 (1976). Furthermore, there is no evidence that Whentworth was denied the right to call witnesses on his behalf at the disciplinary hearing. Even if prison officials circumscribed his right to do so, "[p]rison officials have the right to refuse to allow a prisoner to call certain witnesses or have access to certain evidence if the needs of the prison so require." Doan v. Buss, 82 Fed. Appx. 168, 171 (7th Cir. 2003) (citing Wolff, 418 U.S. at 566). Therefore, for the reasons discussed more fully in this Report and Recommendation, Whentworth's Sixth Amendment claims fail.

11 Alternatively, Whentworth may have meant that the disciplinary hearing itself was conducted in an arbitrary and capricious manner. In any event, the Court rejects both claims.

"The Supreme Court has outlined procedures correctional facilities must follow to conduct an impartial due process hearing on a disciplinary matter." Hartsfield v. Nichols, 511 F.3d 826, 830 (8th Cir. 2008) (citing Wolff v. McDonnell, 418 U.S. 539, 563-66 (1974)). An inmate is entitled to: (1) advance written notice of the claimed violation at least 24 hours before the disciplinary hearing; (2) the right to call witnesses and present documentary evidence in his defense, if doing so will not jeopardize institutional safety or correctional goals; and (3) to receive a written statement from an impartial decisionmaker identifying the evidence relied upon and the reasons for the disciplinary action. Wolff, 418 U.S. at 563-66.

However, "[i]n the prison context, where swift and sure punishment is often imperative, the Constitution does not require trial-like evidentiary standards." Hrbek v. Nix, 12 F.3d 777, 780 (8th Cir. 1993). In Wolff, the Supreme Court recognized that the prison environment necessitated granting prison officials discretion in setting evidentiary standards in disciplinary hearings. Wolff, 418 U.S. at 566.

> Ordinarily the right to present evidence is basic to a fair hearing; but the unrestricted right to call witnesses from the prison population carries obvious potential for disruption and for interference with the swift punishment that in individual cases may be essential to carrying out the correctional program of the institution ... prison official must have the discretion to keep the hearing within reasonable limits and to refuse to call witnesses that may create a risk of reprisal or undermine authority, as well as to limit access to other inmates to collect statements or to compile other documentary evidence.

Wolff, 418 U.S. at 566. Consequently, neither confrontation nor cross-examination of witnesses are required to pass Constitutional muster. Id. at 567. The Wolff requirements have been codified by the BOP at 28 C.F.R. §541 et. seq. and were

recognized by the Eight Circuit in Espinoza v. Peterson, 283 F.3d 949, 951-52 (8th Cir. 2002) (cert. denied, 537 U.S. 870 (2002)).

Whentworth has alleged that he was denied due process in that he was refused the appointment of a staff representative to assist him at the discipline hearing; he was denied the opportunity to call witnesses in his defense; "on information and belief," the DHO was not trained or certified to be a DHO and he should not have been allowed to preside over the discipline hearing; he was denied access to his cellmate's disciplinary records; and the BOP violated Program Statement 5270.07 by failing to advise him that the issuance of the DHO report would be delayed. Petition, p. 8.

The evidence indicates that Whentworth was advised of and waived his right to assistance from a staff representative and did not ask that any witnesses appear at the hearing. Kinyon Decl., ¶4, Attachment 2, pp. 1, 2, 8, 9. Indeed, Whentworth's signatures are found on both the "Inmate Rights at Disciplinary Hearing," form dated February 2, 2010, in which he was notified of his right to representation by a staff member and the right to call witnesses, and on the "Notice of Discipline Hearing Before the DHO" form, dated the same day, at which time he indicated that he did not wish to have a staff representative present at hearing and he did not wish to call witnesses. Id., pp. 8, 9. Whentworth's unsupported statement in his Petition that he was denied access to a staff representative to assist him at the hearing, and that he was denied the right to call witnesses is insufficient to overcome the documentary evidence to the contrary, the authenticity or accuracy of which Whentworth did not challenge. In short, there is no evidence to support Whentworth's claim that he was denied due process by

being denied the right to present witnesses or to obtain the assistance of a staff representative.

As for Whentworth's claim that Smart was neither trained nor certified to be a DHO, (Petition, p. 8), the Kinyon Declaration stated that Smart is a certified DHO "who was an impartial hearing officer who was not personally involved with this incident, or any other part of the initial disciplinary process." Kinyon Decl., ¶6. Whentworth attacked Kinyon's Declaration regarding Smart's qualifications, stating that she had "improperly vouche[d] for his credibility and qualifications." Pet. Reply, p. 2. This argument is meritless. Kinyon's statements were provided under penalty of perjury and Whentworth has provided no evidence to suggest that her statements are false. Prison officials, like other officials, are presumed to be impartial decisionmakers, and an inmate's subjective beliefs, without more, that the officials acted improperly, are insufficient to survive summary judgment. Cf. de Llano v. Berglund, 282 F.3d 1031, 1035-36 (8th Cir.2002) (" 'We begin with a presumption that decision-makers are honest and impartial. [The plaintiff] offers no evidence of vindictive behavior beyond his mere statement of belief that the Board members acted in this manner ... [The plaintiff's] beliefs have no effect and do not create a genuine issue of material fact that would preclude summary judgment.' ") (quoting Marler v. Missouri State Bd. of Optometry, 102 F.3d 1453, 1457 (8th Cir.1996) (bracketing in de Llano). The requirement of impartiality is satisfied by a hearing that "ensures that the inmate has an opportunity to persuade an impartial decisionmaker, who must give written justification for his decision, that discipline is not warranted." Hartsfield, 511 F.3d at 831 (quoting Hrbek, 12 F.3d at 781 (discussing hearing requirements set forth in Wolff). Such is the case here. In the

absence of any contrary evidence, the Court finds that the DHO was an unbiased and impartial decisionmaker.

Turning to Whentworth's claim that he sought, and was denied, access to his cellmate's disciplinary records – records he maintains would show that his cellmate was not disciplined for the contraband discovered in an area under his cellmate's control – even if true, does not lead to the conclusion that Whentworth was denied due process, much less that the DHO's decision was wrong. Whentworth did not provide the Court with any evidence that he asked for the records or that he had a right to the records.[12] More to the point, the Court fails to see how such records would have advanced Whentworth's case, where his cellmate denied the contraband was his. As a result, the Court has no basis upon which it could conclude that the BOP's denial of access to his cellmate's disciplinary records (if such a request was made) violated Whentworth's due process rights.

Finally, as to Whentworth's assertion that he was denied due process because the BOP violated Program Statement 5270.07 by failing to advise him that the issuance of the DHO report would be delayed, (Petition, p. 8), the Court finds this claim has no merit. Program Statement 5270.07 was rescinded on March 20, 2006 and superseded by Program Statement 5270.08. Powell v. Daniels, Civ. No. 10-723, 2011 WL 1465577 at *3 (D. Colo., April 18, 2011). Program Statement 5270.08 was rescinded and superseded on August 8, 2011 by Program Statement 5270.09. This Court could locate

[12] The Supreme Court in Wolff did not require prison official to explain why they had refused to allow an inmate to call witnesses or present evidence. See Wolff, 418 U.S. at 566; see also Ponte v. Real, 471 U.S. 491, 496 (1985) (holding that due process does not require that the reasons for refusing to call witnesses requested by an inmate at a disciplinary hearing be placed in writing.).

no requirement in any of the Program Statements that an inmate be advised in advance that the issuance of a DHO report will be delayed. However, even if Whentworth could establish that the BOP did not act in conformance with one of its Program Statements, he would still not be entitled habeas relief. "[T]here is no federal constitutional liberty interest in having ... prison officials follow prison regulations." Phillips v. Norris, 320 F.3d 844, 847 (8th Cir. 2003); Barner v. Williamson, 233 Fed. Appx. 197, 199 (3d Cir. 2007) (stating that inmate had not shown that § 541.15(a) creates a liberty interest or that its violation "necessarily abridges the constitutional protections established in Wolff"). To be entitled to habeas relief, an inmate must establish a violation of the Wolff due process standards. As a result, courts have consistently refused to find a due process violation founded solely on a violation of BOP regulations. See Kennedy v. Blankenship, 100 F. 3d 640, 643 (8th Cir. 1996) (noting that a prisoner does not have a constitutional interest in the procedures by which the government "believes it can best determine how he should be confined") (citing Olim v. Wakinekona, 461 U.S. 238, 250 (1983) ("Process is not an end in itself. Its constitutional purpose is to protect a substantive interest to which the individual has a legitimate claim of entitlement") and Griffin-El v. Delo, 34 F.3d 602, 604, n.3 (8th Cir. 1994) (inmate does not have a liberty interest in a particular procedure)); Somerset v. Fondren, Civ. No. 09-788 (MJD/SRN), 2009 WL 3461410 at *5 (D. Minn., Oct. 20, 2009) ("[a]n inmate gains no legally protected interest in an erroneous application of the BOP's regulations"); Stanko v. Rios, Civ. No. 08-3102 (JNE/JJG), 2009 WL 1066021 at *6 (D. Minn., April 20, 2009) ("Even if prison officials took over twenty-four hours to advise [the prisoner] about the charges, § 541.15(a) does not require notice within this period. The regulation only

provides that notice "ordinarily" shall be during this time, which indicates notice during this period is not mandatory ... And due process only requires that a prisoner receive notice of charges twenty-four hours *before* the disciplinary hearing ... For these reasons, § 514.15 also does not grant [the prisoner] relief here.") (emphasis in original) (internal citations omitted). Here, the Wolff due process requirements were satisfied and Whentworth is not entitled to habeas relief on the basis of any perceived or actual violation of a Program Statement by the BOP that does not touch on Whentworth's due process rights.

In reviewing the record as a whole, this Court finds that Whentworth was afforded the procedural due process prescribed by Wolff. He was provided with advance written notice of the charges against him when he was given copies of the original and rewritten incident reports. Kinyon Decl., ¶3, Attachment 2, pp. 5-6. More than two weeks before the hearing before the DHO, on February 2, 2010, Whentworth was notified of his rights, including his right to representation by a staff member and the right to call witnesses at the hearing, and he expressly indicated that he did not wish to have a staff representative present at the hearing and he did not wish to call witnesses at the hearing. Id., pp. 8, 9. He received a written copy of the DHO's decision, albeit several months after the hearing, and as discussed below, it apprised him of the evidence and reasons for the actions taken. On these facts, the Court concludes that Whentworth was provided adequate procedural due process under the standards described by Wolff.

**C. The DHO's Decision Was Supported by "Some Evidence"**

The court must uphold the decision of a DHO if the petitioner has been provided the due process described by Wolff, and as long as the DHO's decision is supported by "some evidence." See Superintendent, Mass. Corr. Inst. v. Hill, 472 U.S. 445, 454 (1985); see also Espinoza v. Peterson, 283 F.3d 949, 951-52 (8th Cir.) (cert. denied, 537 U.S. 870 (2002)) (applying Hill requirement of "some evidence" to claim by federal inmate that he was denied due process when he lost 13 days of "good time" credit for fighting with another inmate); Ragan v. Lynch, 113 F.3d 875, 876 (8th Cir. 1997) ("[w]hen inmates are entitled to due process before being disciplined, they must receive: (1) advance written notice of the charges; (2) an opportunity to present evidence in their defense; (3) a written statement by the fact finder of the reasons for the action; and (4) a decision supported by some evidence in the record.")

The "some evidence" standard is satisfied if:

> 'there was some evidence from which the conclusion of the administrative tribunal could be deduced....' United States ex rel. Vajtauer v. Commissioner of Immigration, [273 U.S. 103, 106 (1927)]. Ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board.

Hill, 472 U.S. at 455-56 (emphasis added).

According to Hill, the findings of a prison disciplinary authority cannot be overturned even where the supporting evidence "might be characterized as meager," or wholly circumstantial. Id. at 457. As long as there is at least some evidence to support

the DHO's decision, and the disciplinary action is not wholly insupportable, the requirements of due process are met. Id.

Whentworth has challenged the sufficiency of the evidence on which the DHO based his decision. Petition, pp. 7-9. This Court finds otherwise. The DHO explained that he relied on the photograph of contraband and the written statement of Gay, the staff member who found the contraband in Whentworth's cell and reported that Whentworth told him that the items were his. Kinyon Decl., Attachment 2, p. 2. Additionally, although Whentworth denied that the contraband belonged to him, the DHO indicated that in light of Whentworth's statement during the hearing that "I told another inmate to go intercept it and pick it up," his earlier statement to Gay that the items did belong to him, and the statement to the investigating officer that "yes, it's my stuff," the DHO concluded that Whentworth had, at the least, "knowing possession" of the contraband. Id., pp. 2-3. The DHO summarized his reasons by stating: "Based on your half-hearted admission statements regarding knowing possession, the greater weight of evidence suggests the items of contraband were yours and not your cell-mate; as he denied any knowledge of the contraband throughout the discipline process." Id., p. 3

The Court finds that the statements, testimony and photographic evidence on which the DHO relied, coupled with the reasons articulated by the DHO for his decision, easily met the "some evidence" standard of Hill. Accordingly, the Court finds Whentworth's due process challenge must be denied and the DHO's decision upheld.

## III. CONCLUSION

For the reasons discussed above, the Court concludes that the BOP did not violate Whentworth's due process rights in the manner in which it disciplined him. The Court recommends that Whentworth's petition for a writ of habeas corpus be denied, and this case be dismissed with prejudice

## IV. RECOMMENDATION

Based on the foregoing, and all the files, records and proceedings herein:

1. Whentworth's application for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 [Docket No. 1] be **DENIED**;

2. This action be **DISMISSED WITH PREJUDICE**.

Dated: October 6, 2011

*Janie S. Mayeron*
JANIE S. MAYERON
United States Magistrate Judge

**NOTICE**

Under D. Minn. LR 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties by **October 20, 2011**, a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections. Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals. A party may respond to the objecting party's brief within fourteen days after service thereof. A judge shall make a de novo determination of those portions to which objection is made. This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable to the Court of Appeals.